Welcome. Pleased to be sitting here today with Judges Grant and Ed Karnes. We are going to be hearing three cases today. And before I get started, just to make sure everybody is familiar with the way this works with our clock, we run on a traffic light system. When you get to two minutes left, you will see the light flash to yellow. When you get to the end, it will flash to red. If you could wrap up your remarks, finish the sentence that you are in the middle of. But otherwise, I'm going to stop you. The first case that we've got today is Victoria Bird v. University of Florida Board of Trustees, Thomas Stringer and Li Ming Su, 22-12061. Ms. Marks, you have 12 minutes. You've reserved three for rebuttal whenever you are ready to proceed. Good morning, Your Honors. May it please the Court, this Court should reverse the District Court's grant of summary judgment dismissing Dr. Bird's sex discrimination, gender harassment, retaliatory harassment, and 1983 claims and should vacate the trial judgment and award of costs. The District Court failed to ever rule on Dr. Bird's motion to compel production of documents regarding relevant comparators and failed to ever rule on Dr. Bird's motion to compel admissions that UF had no documentation to support its and the 2016 evaluation that incorporated the contents of the counseling. How did you apprise the District Court of the outstanding discovery request through an equivalent form of notice to 56D? Yes, Your Honor. We raised the issue in the brief that we needed the depositions of Dr. Su and Stringer to test the bona fides of the articulations raised in Dr. Su's affidavit. You're talking about the response to the motion for summary judgment? In the response to the motion for summary judgment. So you did that on page 13 in a footnote that's, at least in my estimation, is more in passing, saying, oh, by the way, we need the depositions of Dr. Su and Stringer. How is that providing sufficient notice to the District Court? Well, the Court was also aware that there was ongoing discovery that it had authorized Pursuant because of COVID. So the docket was replete with the Court's own orders, numerous hearings, and in fact, the outstanding motion to compel, as in Snook, and the briefing on that, put the Court on notice that there were outstanding discovery issues and that we needed these depositions. In fact, there was a joint motion filed by the parties on August 14, some two weeks before the judge's order, telling the judge that these depositions were still outstanding in light of COVID and needed to be taken. What was that date again? What was that date? August 14. There was a joint motion. What year? 2020. Two weeks prior to the Court's order. There had been numerous hearings and orders regarding the production of documents that still needed to be produced. Counsel, don't our decisions say that you have to specifically inform the Court why you need those depositions? Just saying you need them to make your case doesn't cut it. Well, we told the Court that we needed the depositions of Dr. Sue and Stringer in order to challenge the articulations that were raised by Dr. Sue in his affidavit. That's not very specific about what you expected them to say. Well, it wasn't a general need for discovery, Your Honor. But every discovery you do is to challenge the other side's case. By definition, telling them that's why you needed it doesn't help the District Court appraise your reasons. Dr. Sue, UF's sole reliance on summary judgment, which was really supposed to be limited to Dr. Sue's deposition, to challenge his statements in his affidavit. But this is what you said exactly in footnote 5 in your response to the motion for summary judgment. Plaintiff will only be able to probe the factual bases of the August 27, 2015 evaluation, August 9, 2016 counseling letter, and the September 7, 2016 evaluation when she takes the depositions of Dr. Sue and Stringer later this month. How is that enough? Well, it was enough also in light of the Court's awareness that we had been requesting production of documents and admissions that there was no documentation to support any of UF's allegations against Dr. Byrd. So the combination of Dr. Sue's deposition, which in fact was a document that in fact corroborated the absence of any factual basis for his assertions, and the fact that he did no independent investigation, coupled with the absence of any documentation, certainly put the Court on notice that it would be important for us to question Dr. Sue about his assertions in his affidavit. So, all you've got to do then under this alleged requirement, and to put scare quotes around requirement as you interpret it, is tell the Court that you need to take some depositions to challenge what they say? Well, no. That's what you just said, basically. In part, but this Court's decision in Snook indicated that once there was an outstanding motion to compel, as there was here, that put the Court on notice, and the briefing on that issue put the Court on notice. Now, the motion to compel had been made two times, the first on April 13, 2020, and was not decided. It was deferred by the Court, and then the Court granted leave to the plaintiff to refile it, which she did timely. Counsel, did our Court in Snook hold that the District Court abused its discretion not allowing the depositions? This Court in Snook said that the Court's granting summary judgment during the pendency of an outstanding motion to compel was reversible error. That's what this Court said. And we reversed the District Court on that case. Yes. So you have argued we should be doing a de novo review? Yes. So the other side is telling us abuse of discretion, and we do have two cases, Florida Power and Light and Reflectone, that talk about when a Court has denied a Rule 56d motion that we would review under abuse of discretion. So what case law can you cite us to that when you don't file one, you get a better standard of review? Okay. First, this Court has adhered to the principle that de novo in this Court means the entire record. That's the first thing. I think it's Short v. Mando quoting the Parler case. But also, the Court abused its discretion in denying Dr. Byrd's Rule 54 motion for reconsideration. There the motion was timely. The second reason the Court there abused its discretion because its second reason that it was limited to the record before it was based on its own legal error since it authorized the post-summary judgment. So I agree with you on the motion for reconsideration, you have abuse of discretion. But on the 56d issue, you're arguing for de novo. Yes. And so what I'm saying is that we have two cases that suggest if a Court denies, if somebody has actually filed a motion, filed the affidavit in a 56d affidavit, that it's abuse of discretion that we review that ruling. But here, you haven't even filed the affidavit, which again, our case law suggests that's fine. But how do you now get de novo because you don't file it, whereas if somebody files it, they get abuse of discretion? Yes, Your Honor. I believe that a legal error is considered an abuse of discretion. And so the Court's legal error in granting summary judgment, certainly under Snook, during the pendency of a motion to compel, is a legal error, which itself amounts to abuse of discretion. So any ruling on evidence? Excuse me? So any ruling on evidence that feeds into the grant or denial of some grant of summary judgment, we review de novo? Yes. Oh, come on. Well, if... Oh, come on. If procedurally... All right, you've got a Daubert motion. Excuse me? A Daubert motion. And the District Court says no. You know, this wouldn't help the jury. Not sufficiently expert, blah, blah, blah. And therefore, I'm going to deny the motion for summary judgment. You say we review the Daubert motion de novo? Well, I'm saying that we review the merits of the grant of summary judgment de novo. Without reviewing de novo, the antecedent ruling that brought the evidence into the time of District Court makes an evidentiary determination. On the way to ruling on summary judgment, we go in and start over. I think here the factual bases of the Court's decision were precisely at issue on the motion to compel. And the Court's giving us leave to refile that was its tacit admonition to the relevance of that information under this Court's decision in Fernandez. Maybe the judge just thought, well, I'll hear them out, but I don't think they've got the right to do that. He hears you out and says, no, they don't. No good deed goes unpunished is your principle. But in sum, our position is the record was replete. The Court had... The discovery period initially actually didn't even end until March 31st. It was suspended in light of COVID pursuant to the Court's authorization. There were numerous motions, hearing docket entries that put the Court on notice. We raised the issue to the Court at the summary judgment hearing and then two weeks just before its decision of the need for the specific evidence, the absence of documentation, and that these depositions would be necessary to refute the articulations raised by the defense. But the Court, in its motion, in its order on the motion for summary judgment, says summary judgment is not premature and points out that your client has not specified what additional discovery is needed to establish a genuine issue of material fact. Well, we challenge that because we specifically discuss these issues at the summary judgment hearing, the absence of the documentation, the need to explain why there were no documents when Shan's policy required reporting of any medical competence issues, and the fact that Drs. Stringer and Hsu themselves, we had the documents, had recommended Dr. Bird, had no problems with Dr. Bird and told Shan's that with Dr. Hsu specifically telling Shan's that he would recommend Friends and Family to her. Well, you're now giving a lot more detail than was in footnote 5 on page 13 of your response to the motion for summary judgment. But that's not what you did at the time. Correct? Can I respond to that? Yes, please. But I'm saying to you, during the development of the, the Court decided the issue on September 1st. Between the time of the submission of the papers in March of 2020 and the Court's decision, there had been a lot of discussion with the Court about what the evidence, what evidence was needed and that we were contesting the validity of the articulation and we needed the depositions for this. And there was already abundant evidence in the record raising disputed issues of material Here's the problem I have with that, counsel, and I understand your argument and you make it capable. But the problem with that is the reason for the declaration or affidavit is for the district judge not to do your work for you. The district judge doesn't have to go or shouldn't have to go back through the record and back through other pleadings and back through other motions and briefs and discovery and figure out whether you need it or not. You're supposed to put that in an affidavit or declaration, which is why the rule requires that. Can I respond? Sure. The cases in which, in which the, in which the equal form of notice was found not to have occurred was where there was just a general request for discovery. Here we were pretty specific about needing the depositions of Dr. Sue and Dr. Stringer to refuse. Where were you specific though? We raised it in our brief and we repeatedly raised it. In a footnote? Yes, the brief was filed in March of 2020 and the district court issued its decision on September 1st, 2020. And between that time there had been numerous hearings and motions. Still you, still you didn't have an affidavit or declaration saying this is why we need it. But under, but Snook says we don't need an affidavit and we only need an equivalent form of notice. And certainly the outstanding motion to compel, as in Snook, where there it was the equivalent form of notice, so too was it here. Thank you. And you have three minutes for rebuttal. Mr. Wright. Your Honors, may it please the court, I'm Todd Wright and I represent the appellees in this case. Your Honors, it's well established that a district court does not need to await the And obviously that is the situation that we experienced in this particular case. And as Your Honors have pointed out at this argument, there was never an affidavit filed pursuant to Rule 56D. We do not dispute the equivalent notice law. It's just our position that no equivalent notice was ever provided to the court. Let's go back to the kind of general point that you raised. I think that rule applies most easily where there's maybe some obscure discovery, outstanding, things like that. But here was the depositions of probably the two top decision-makers related to these claims. Why wouldn't the court, set aside the specific official requirements, why wouldn't the court realize that that information was necessary? If you look at this in context, Your Honor, we've outlined the procedural policy. We've outlined the posture of this issue in our brief. We actually argued to the court, this issue of the summary judgment timing actually stemmed from their financial worth discovery in this case. And we argued to the court and we filed a motion that we should be entitled to defer financial worth discovery until the court decides the qualified immunity motion that we were going to be asserting via motion for summary judgment. And we also apprised the court that because the issues with all the claims were interrelated, that it was the defendant's preference to file a singular motion for summary judgment addressing all claims. And plaintiff objected to this relief and we had to seek leave from court twice to defer our financial worth discovery and finally the judge set a deadline for us to file the motion for summary judgment. Counsel knew that they had not taken the depositions of Dr. Stringer or Dr. Sioux at that point in time or any of the other depositions that they claimed were necessary for resolution of the motion for summary judgment. And we briefed the issue. And as Your Honors have pointed out, the only time they said that they needed more discovery or even suggested it was in a footnote in their response brief. We had the hearing and it was, I believe, a two-hour hearing on summary judgment. And not once in that hearing did they argue that summary judgment was premature because they have not had the opportunity to take a particular deposition. The case had been pending for, I believe, a year and a half to two years at this time. The depositions of Dr. Sioux and Dr. Stringer and other relevant witnesses had been scheduled and then canceled, scheduled and canceled. This was not a situation where they were unable to take these depositions. It was a situation where they just elected not to. And the delays in discovery were not COVID-related. COVID kind of came in when we're moving into the summary judgment arena, right? It did, Your Honor, 2020. And even with COVID, they still could have taken the depositions via Zoom and they elected not to. And that's their prerogative. We're not saying that they had to do that. But what they did need to do and what was not done here was specifically tell the court that these depositions were necessary for purposes of ruling on summary judgment. And because they never did that, it's our position that they have not provided equivalent notice and that the circuit court, the district court was well within its discretion to rule on the summary judgment when it did. What did y'all do for two hours on summary judgment hearing? Well, there was a number of claims, Your Honor. I believe there was eight or nine claims pending. That was all argument. Of course, you don't, on summary judgment, you don't present any witnesses, right? That's right. There was no evidence taken. It was pure argument. But it's our position at that hearing, if they were to take the position that summary judgment was premature, they should have at least pointed it out to the judge. And they did not and the judge gave the parties the opportunity. So you're saying, you're saying in the argument that lasted two hours on the summary judgment motion that now they're saying was premature and shouldn't have been ruled on until after they took the depositions and they never once said we need to take the deposition before  Maybe not, Your Honor. And that is our position. So had they said that, the judge could have deferred. We could have taken depositions. But they did not. And, Your Honor, it's record number 35. All right. When did the footnote appear? The footnote was in their answer brief. Their response brief. To the motion? To our motion for summary judgment.     Before the hearing. Before the hearing. Before the hearing. Before the hearing. Before the hearing. Before the hearing. Before the hearing. Okay. So they had already asserted it. Well, they had just whatever was in the footnote was already asserted. And then they had a line at the very end of the motion that said summary judgment is premature because discovery is outstanding. But at no point did they ever apprise the court of what particular discovery was necessary in order to rule on the summary judgment. And they never asked for a deferral. They could have easily asked the court for a deferral of the summary judgment at the hearing or through a motion prior to the court's ruling. And at no point did they ever do that. What about the fact that after you, your client, filed a motion for summary judgment, Dr. Byrd filed, I think, two motions to compel. I mean, isn't that also serving to, in addition to footnote five of their response, of her response to the motion for summary judgment, and then she's filing motions to compel which are specifically identifying discovery that your client is refusing to produce. Is that not sufficient? So, Your Honor, if you want to take a look at the timing, document 79 in the record is when they initially filed their response in opposition to the motion for summary judgment. And if I recall correctly, I believe the court struck that because of page limitations. I'd have to go back in the record. So then document 82 was their first motion to compel. And it sought patient safety reports, urology department physician annual evaluations. So they wanted the annual evaluations of all the physicians in the department. And that's primarily what they sought in document 82. Isn't that how you might go about showing a comparator? Well, they admitted at the hearing that there is no comparator. So the comparator issue was not a facet of the summary judgment analysis. They stipulated that they don't have a comparator. Did they stipulate that they couldn't have a comparator or that they didn't have a comparator at that time? They agreed with the court at the summary judgment hearing that they did not have a comparator. But you see the difference between the two things I'm asking, right? We don't have a comparator today versus we don't have any of the data about the other physicians. So we don't have a comparator right now. Those are two different things. I see what you're saying. And I don't know that patient safety reports or physician annual evaluations would be material to that particular issue. Because I don't think either one of those documents or those types of information would show that those other physicians are similarly situated with Dr. Byrd in all material respects. And again, if your honor, if they wanted to take that position, they should have specifically and explicitly apprised the court of that and they failed to do so. So these two motions to compel were filed, were the information sought in these motions to compel ever produced? I know that the depositions were taken later. The patient safety reports were never produced, your honor. And I don't know that we ever produced the annual evaluations of the other physicians in the department. We did, there was, document 85 dealt with documents that we had withheld on the basis of privilege. And the court did rule on that and we ultimately did produce some of those documents pursuant to the court's ruling. What about substantively the Title VII disparate treatment claim? Why wasn't there enough evidence that Dr. Sue relied on Dr. Stringer when he, let's call it, relied on Stringer's yearly evaluation for that information? And he also relied on a witness who was sent to him by Dr. Stringer, a witness to an event, even though that witness, it turns out, didn't even see the event. How is there not enough on that claim to get past summary judgment? With respect to the CAS file analysis, your honor? Yes, but really to any of it. So, the way they have argued this case and developed this case was that all the gender animus was held by Dr. Stringer, not Dr. Sue. And it's our position that there's no evidence, particularly, especially in front of the summary judgment record, that Dr. Stringer had any influence on either one of the adverse employment actions at issue in this case, and that was her non-renewal and her subsequent removal from clinic post-non-renewal. There's... But it turns out, based on the deposition, I mean, whether that becomes a fact or not is a different question, but it turns out, based on the deposition, that that's not true. The post-summary judgment deposition of Dr. Sue? Yes. Your honor, for purposes of the summary judgment, again, they needed to marshal that evidence prior to summary judgment. They can't... But before summary judgment, though, didn't Sue say that he based his research on notes from Dr. Stringer? We're limited at summary judgment to what's in his affidavit, your honor. I don't want to put words in his mouth. He did conduct... So, Dr. Stringer did the 2015 evaluation of Dr. Bird, and then Dr. Sue did her 2016 evaluation. It is true that Dr. Sue did rely on input from others, but not just Dr. Stringer. Ms. Carnevale, who was the ACU manager, also had input, and he also had input from other physicians that Dr. Bird had referred for what's called a cystoscopy, wherein she would go in and refer them for another procedure to have a bladder lesion biopsied, and several other physicians, including Dr. Sue, would go in, and there would be no pathology to even biopsy. So, it wasn't just Dr. Stringer's input that he was relying upon in evaluating her performance. Do you know if Dr. Stringer has been disciplined at all for what appears to be agreement about his comment, understanding that these comments were made, whether or not they resulted in a win for Dr. Bird is a different question, but has there been any discipline against Dr. Stringer? In relation to Dr. Bird? In relation to his well-known comments about women. There was a scenario prior to Dr. Bird starting at UF where he did apologize to staff at the hospital, but that was based on gender harassment. I think it was just based on his general demeanor, a difference of culture. He did apologize, but again, this predated Dr. Bird's employment. So, your answer to Judge Grant's question is no. There's no evidence he was ever disciplined. Takes less time just to answer the question. Your Honor, I'm happy to argue another point or address any questions that the court may have. The rest of the time is yours to decide how you would choose to use it. There's no penalty if you don't use it all. I have no further argument. Thank you. All right, Ms. Marks, you have three minutes. I would like to point out that the motion for summary judgment was known by everybody to be limited to qualified immunity, which the court set forth in R63. So, the court specifically discusses the summary judgment motion for qualified immunity. The plaintiff didn't take... But, of course, qualified immunity embraces the merits. But I don't... In fact, there was a lot of discussion about a global motion or a motion for qualified immunity. I think we referred to that in our brief. And there was some discussion about that on January 2nd. So, for two hours, y'all didn't mention the merits. You just mentioned whether there was another case that had been decided that was like this one? No, I'm talking about the January 2nd hearing where the issue of what motion the defendants were going to be filed was discussed. Okay, the procedural hearing. We didn't take the depositions. We had planned on taking the depositions of Suen, Stringer, and others in November. But the defendants, and the court was concerned about their rolling production, had just two days before their depositions produced another 814 pages of documents. And we adjourned the depositions on that basis. There were outstanding discovery issues that we were trying to resolve all through January. And they told us they couldn't do that because they were working on the summary judgment papers. We did inform the judge in the July 20th hearing on pages 19 and 20 that discovery was ongoing. The briefs were filed months before the hearing, I'd like to point out. Mr. Wright talked about the motion to compel regarding privilege and PSRs, but I'd like to note that we had to be given permission to file specific motions to compel. And we filed the motion to compel regarding the comparators and the absence of documentation at the earliest opportunity that we were allowed to do so based on the court's requirement that we confer. And then we did that first on April 13th, that's Doc 101. And when that was denied without prejudice to refile so we could revisit that, was refiled on December 11th, timely pursuant to the court's order. And those motions were never decided. And that had to do exactly with the issue of no documentation of any of these derelictions. I have one more thing to add if you'll just let me. Before the court at summary judgment, it had what we call the hostage memo. That is Dr. Su's email to Dr. Stringer right after the April 7th incident asking him to non-renew, basically asking him to non-renew Dr. Bird which Kim Baxley at her deposition testified was a reasonable reading of that memo. And the court also had Candy Kish's notes reflecting Dr. Stringer's direct participation in that March 31st meeting. And at his deposition, Dr. Stringer admitted that the reasons he gave were reasonable reasons that of course she should be fired for her complaints about bias, etc. Thank you, Ms. Marks. Thank you both. We have your case under advisement. I'll give you all a chance to get set up but the next case is Charles Johnson, Jr.